IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF PEARLAND, TEXAS, | § | |
|     Plaintiff, | § | |
| | § | |
| And the | § | |
| | § | |
| STATE OF TEXAS, acting by and through | § | |
| the Texas Commission on Environmental | § | |
| Quality, a Necessary and Indispensable | § | CIVIL ACTION NO. 1:17-CV-00730-SS |
| Party, | § | |
| | § | |
| v. | § | |
| | § | |
| BLUE RIDGE LANDFILL TX, LP., | § | |
|     Defendant. | § | |

## THE STATE OF TEXAS'S MOTION TO REMAND

The State of Texas, acting by and through the Texas Commission on Environmental Quality ("State" or "Texas"), files this Motion to Remand. Federal diversity subject matter jurisdiction is lacking over this civil action. Further, the removal by Defendant Blue Ridge Landfill TX, L.P. is defective. Therefore, this civil action should be remanded to the 98th Judicial District Court of Travis County, Texas.

## I.    Introduction

1.1    This is a civil enforcement action to remedy violations of the Texas Clean Air Act[1] and related regulations. Plaintiff, the City of Pearland ("Pearland"), initiated the action pursuant to Texas Water Code Section 7.353.

1.2    Plaintiff Pearland filed the action on July 6, 2017 in the 98th Judicial

---

[1] Texas Health & Safety Code chapter 382 may be cited as the Texas Clear Air Act. Tex. Health & Safety Code § 382.001.

District Court of Travis County, Texas.

1.3     The Defendant is Blue Ridge Landfill TX, L.P. ("BRL").  It owns and operates a landfill in Fresno, Fort Bend County Texas.

1.4     Plaintiff Pearland's original petition alleges that BRL violated the Texas Clean Air Act and related regulations by emitting air contaminants that contribute to air pollution and interfere with the normal use and enjoyment of property.  *See* Doc. 1-3.

1.5     Pearland joined the State of Texas, acting by and through the Texas Commission on Environmental Quality ("TCEQ"), as a necessary and indispensable party, as required by Texas Water Code Section 7.353.  Doc. 1-3 at 2.  Subsequently, Pearland provided the TCEQ with a copy of its original petition.

1.6     On August 1, 2017, Pearland served its original petition on BRL.  Doc. 1 at pg. 2.  On August 4, 2017, BRL filed its Notice of Removal to the United States District Court for the Western District of Texas, Austin Division.  *Id*.  BRL did not provide Texas with written notice of its Notice of Removal, notwithstanding that Title 28 United States Code Section 1446(d) requires written notice of the removal be provided to all adverse parties.  *See* 28 U.S.C. § 1446(d).  Thus, BRL's removal was defective.

1.7     There can be no diversity jurisdiction when a state is a party.  Accordingly, the presence of Texas (acting though the TCEQ) as a party in this lawsuit precludes complete diversity among the parties, and this Court lacks diversity subject-matter jurisdiction.

1.8    Therefore, the State moves the Court to remand this action to the 98th Judicial

District Court of Travis County, Texas because BRL's removal was procedurally defective

and this Court lacks jurisdiction.

## II.    Standards for Removal and Remand

2.1    This is a civil action brought under Texas environmental statutes and

regulations promulgated by the TCEQ.  It does not arise under the Constitution, laws or

treaties of the United States, and it does not involve a foreign state or the subjects of a

foreign state.  Accordingly, it may only be removed to a district court of the United States

if the amount in controversy exceeds the sum or value of $75,000 and there is complete

diversity between the parties.  28 U.S.C. §§ 1330 – 1332(a), 1441(a), (b).

2.2    Defendant BRL sought removal, and thus it bears the burden of showing that

federal diversity jurisdiction exists and that removal was proper.  Mumfrey v. CVS

Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013).  To determine whether jurisdiction is

present for removal, courts consider the claims in the state court petition as they existed at

the time of removal.  Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th

Cir. 2002) (*citing* Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir.

1995). Any ambiguities are construed against removal because the removal statute should

be strictly construed in favor of remand. *Id.* (*citing* Acuna v. Brown & Root, Inc., 200 F.3d

335, 339 (5th Cir.2000)).  Further, any doubts regarding whether removal jurisdiction is

proper should be resolved against federal jurisdiction.  Acuna, 200 F.3d at 339.

### III.  Texas Environmental Law Enforcement Authority.

3.1    The TCEQ "is the agency of the state given primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment." Tex. Water Code § 5.012[2].  Accordingly, Texas statutes provide the TCEQ with the predominant authority to institute legal proceedings for the enforcement of Texas environmental laws, including the Texas Clean Air Act.  *See id.* at § 7.002; Tex. Health & Safety Code §§ 382.002, 382.011(c), 382.025(a); *see also* <u>BCCA Appeal Grp., Inc. v. City of Houston</u>, 496 S.W.3d 1, 9 (Tex. 2016) ("Chapter 7 of the Water Code provides that the TCEQ may pursue violations of the [Texas Clean Air Act], TCEQ rules or orders, or a TCEQ-issued permit by assessing administrative penalties or authorizing a civil or criminal action.").   When exercising this enforcement authority, "the TCEQ is afforded great discretion to evaluate the violation and determine the appropriate penalty or remedy."  <u>BCCA Appeal Grp.</u>, 496 S.W.3d at 9.

3.2    The Texas Attorney General is the chief legal officer of the State, and thus is authorized by law to represent the interests of the State.  *See* Tex. Const. art. IV, § 22; Tex. Gov't Code § 402.021; <u>Terrazas v. Ramirez</u>, 829 S.W.2d 712, 721 (Tex. 1991); <u>Bullock v. Texas Skating Ass'n</u>, 583 S.W.2d 888, 894 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). On the request of the TCEQ, the Texas Attorney General must "institute a suit in the name of the state" to recover civil penalties and/or for injunctive relief for violations of the

---

[2] Some provisions of the Water Code define "Commission" as the Texas Natural Resource Conservation Commission (TNRCC), but TNRCC's name was changed to TCEQ as part of the agency's 2001 sunset review. *See* Tex. Water Code §§ 5.001(2), 7.001(1); *cf. id.* § 5.051; *see also* Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985; <u>FPL Farming Ltd. v. Envtl. Processing Sys.</u>, L.C., 351 S.W.3d 306, 308 n. 2 (Tex. 2011).

statutes and rules within the TCEQ's jurisdiction.  Tex. Water Code §§ 7.032(e), 7.105(a).

3.3     Texas law also provides local governments with ancillary authority to enforce environmental laws.  Local governments are generally authorized to institute civil suits, "in the same manner as the [TCEQ] in a district court by its own attorney for the injunctive relief or civil penalty, or both…against the person who committed, is committing, or is threatening to commit" a violation of certain environmental laws, including the Texas Clean Air Act and related regulations.  *Id.* § 7.351(a); *cf. id.* § 7.068 ("Payment of an administrative penalty under [Texas Water Code subchapter 7(C)] is full and complete satisfaction of the violation for which the penalty is assessed and precludes any other civil or criminal penalty for the same violation.").  This authority is narrower than, and subordinate to, the TCEQ's enforcement authority.  Accordingly, when such local government suits are instituted, the TCEQ "is a necessary and indispensable party."  *Id.* § 7.353.  Further, Section 7.107 generally prescribes that a civil penalty recovered in a suit brought by a local government shall be divided as follows:

(1) the first $4.3 million of the amount recovered shall be divided equally between:

(A) the state; and

(B) the local government that brought the suit; and

(2) any amount recovered in excess of $4.3 million shall be awarded to the state.

*Id.* § 7.107.[3]

---

[3] For violations that occur before September 1, 2015, civil penalties are divided equally between the state and local government.  Act of May 31, 1997, 75th Leg., R.S., ch. 1072 § 2, 1997 Tex. Gen. Laws 4105, *amended by* Act of May 22, 2015, 84th Leg., R.S. ch. 543, §§ 1, 3, 2015 Tex. Gen. Laws Ch. 1926.

## IV.    Pearland's State Court Petition Shows that
## Federal Diversity Jurisdiction is Lacking.

4.1    A state is not a "citizen" for purposes of federal diversity jurisdiction.  Moor v. Alameda Cty., 411 U.S. 693, 717 (1973).  Likewise, state agencies that are the alter ego of a state are not citizens for the purposes of diversity jurisdiction.  PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist., 81 F.3d 1412, 1416 (5th Cir. 1996).  Thus, in an action where a state or state agency is a party, there ordinarily can be no federal jurisdiction based on diversity of citizenship.  See e.g., Louisiana v. Union Oil Co., 458 F.3d 364, 366 (5th Cir. 2006); Texas v. Veterans Support Org., 166 F. Supp. 3d 816, 819 (W.D. Tex. 2015).

4.2    At the time that BRL removed this action to federal court, Pearland's state court petition asserted that it was a civil enforcement action brought by a local government pursuant to the authority granted in Texas Water Code Section 7.351.  As explained above, the TCEQ exercises the State's predominant environmental enforcement authority and is a necessary and indispensable party in civil actions brought by local governments to enforce state environmental laws. Tex. Water Code §§ 5.051, 7.032(e), 7.105(a), 7.353.  Accordingly, Pearland correctly joined the "State of Texas, acting by and through the Texas Commission on Environmental Quality, a Necessary and Indispensable Party."  Doc. 1-3 at pgs. 1-2.  The presence of Texas as a party, acting through the TCEQ, precludes complete diversity among the parties, and thereby negates federal diversity jurisdiction.

## V.    BRL Failed to Show Federal Diversity Jurisdiction Exists.

5.1    Defendant BRL is the removing party and bears the burden of showing that federal diversity jurisdiction exists and removal was proper.  <u>Mumfrey</u>, 719 F.3d at 397. However, BRL's Notice of Removal did not make such a showing.  Rather, it made two conclusory allegations.   First, BRL alleged that the TCEQ is a nominal party whose citizenship may be disregarded for purposes of diversity jurisdiction.  Doc. 1 at pg. 4. Second, without any legal or factual support, BRL alleged that the TCEQ is an independent state agency and is treated as a citizen of the State of Texas for diversity jurisdiction. *Id*. As explained in greater detail below, both allegations are erroneous.    Consequently, BRL failed to carry its burden to show that jurisdiction exists or that removal was proper. Therefore, this action should be remanded because this Court lacks subject-matter jurisdiction and removal was improper.

## VI.    The TCEQ is a Real Party in Interest.

6.1    In determining diversity jurisdiction, the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 460 (1980).  Thus, if a state is a nominal party with no real interest in the dispute, its citizenship may be disregarded.  <u>Union Oil</u>, 458 F.3d at 366.

6.2    Generally speaking, a party is a real party in interest when it is "directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure 'a genuine adversary issue between the parties.'" <u>Louisiana ex rel.</u>

Caldwell v. Allstate Ins. Co., 536 F.3d 418, 428 (5th Cir. 2008) (*quoting* United States v. Johnson, 319 U.S. 302, 304 (1943)); Veterans Support Org., 166 F. Supp. 3d at 820. Whether a party is formal or nominal for removal purposes depends on whether, in the absence of the party, the court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable. Union Oil, 458 F.3d at 366-367. Federal courts look to state law to determine whether the non-removing party possesses substantive rights that may be asserted. *See* Farrell Constr. Co. v. Jefferson Par., La., 896 F.2d 136, 140 (5th Cir. 1990).

6.3     The TCEQ is a real party in interest: it is the agency with primary responsibility for enforcement of environmental laws in Texas; it is a necessary and indispensable party to suits to enforce state environmental laws brought by local governments; it is required to solicit and consider public comments regarding the propriety of settlements of such environmental enforcement suits; and it is entitled to a significant share of any civil penalty award in such a suit.

6.4     The TCEQ has a real interest in the enforcement of this State's environmental laws, including the Texas Clean Air Act. As explained above, the TCEQ "is the agency of the state given primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment." Tex. Water Code § 5.012. It is statutorily obliged to "administer the law so as to promote the judicious use and maximum conservation and protection of the quality of the environment and the natural resources of the state." *Id*. § 5.120. Accordingly, Texas

statutes provide the TCEQ with the predominant authority to institute legal proceedings for the enforcement of the Texas Clean Air Act. *See id.* at § 7.002; Tex. Health & Safety Code §§ 382.002. Hence, in all civil enforcement proceedings, the TCEQ is statutorily authorized to seek injunctive relief as well as the recovery of civil penalties, attorney's fees, court costs, and reasonable investigative costs. Tex. Water Code §§ 7.032 7.105(a), 7.108. Moreover, statute mandates that Texas recover at least half (plus all amounts in excess of $4.3 million) of all civil penalties recover in a suit initiated by a local government. *Id.* § 7.107. Consequently, when local governments exercise their ancillary authority to institute civil environmental enforcement actions, statute mandates that the TCEQ "is a necessary and indispensable party." *Id.* § 7.353.

6.5     As a necessary and indispensable party to civil environmental enforcement actions, the TCEQ has the substantive right to participate in a manner consistent with its statutory obligation to promote the judicious use and maximum conservation and protection of the quality of the environment and the natural resources of the state. *See id.* at § 5.120. Further, Texas statute generally prescribes that public comment shall be solicited and considered concerning the propriety of a proposed judgment, consent order, or voluntary agreement that would finally settle a civil environmental enforcement action, before the TCEQ may approve or the court may sign the same. *Id.* § 7.110.

6.6     Considering the TCEQ's unique rights and obligations as a necessary and indispensable party, the First Court of Appeals in Houston recently reversed an agreed judgment settling an environmental enforcement action initiated by Brazoria County

because it was rendered without the consent, and over the objection of, Texas. *See* State By & Through Attorney Gen. on Behalf of Texas Comm'n on Envtl. Quality v. Brazoria Cty., 518 S.W.3d 926, 931 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In that case, the plaintiff's petition named the TCEQ as a necessary and indispensable party pursuant to Texas Water Code Section 7.353, and the State of Texas, acting by and through the TCEQ, appeared in the case as an aligned party-plaintiff. *Id*. at 927. Texas objected to the proposed agreed judgment in part because public comment had not been considered as required by Texas Water Code Section 7.110 and because the State "'was not given the opportunity to negotiate the amount of civil penalties awarded in the case' and that '[t]he proposed agreed final judgment does not assess any civil penalties against the defendants for the violations cited in this case.'" *Id*. at 928. In reaching its decision to set the judgment aside, the First Court of Appeals held that, "[a] court cannot render a valid agreed judgment absent consent of the parties at the time the judgment is rendered." *Id*. at 929 (*citing* Chisholm v. Chisholm, 209 S.W.3d 96, 98 (Tex. 2006); Padilla v. LaFrance, 907 S.W.2d 454, 461 (Tex. 1995)).

6.7     The Brazoria County case provides a specific example of why the TCEQ is directly and personally concerned with the outcome of environmental enforcement actions initiated by local governments, and why its participation as a necessary and indispensable party is required to insure genuine adversary issues between the parties (e.g., the assessment of civil penalties, at least half of which must be awarded to the State of Texas). Consequently, if the State of Texas, by and through TCEQ, were absent from this lawsuit,

this Court could not enter a final judgment consistent with law, equity and good conscience, which would not be in any way unfair or inequitable.  <u>Union Oil</u>, F.3d at 366-367.  Rather, such a judgment would prejudice the State of Texas's substantive legal rights and thus would be improper.  Therefore, the TCEQ is a real party in interest in this environmental enforcement action, and its presence as a necessary and indispensable party negates federal diversity jurisdiction.

### VII.    The TCEQ is the State of Texas's Alter Ego for Purposes of Federal Diversity Jurisdiction.

7.1    It is well established that a state is not a "citizen" for purposes of diversity jurisdiction.  <u>Moor</u>, 411 U.S. at 717.  If a suit is brought against a state agency that is the alter ego of the State[4], it is likewise well established that the state agency is not a citizen for the purposes of diversity jurisdiction.  <u>PYCA</u>, 81 F.3d at 1416; <u>Tradigrain, Inc. v. Mississippi State Port Auth.</u>, 701 F.2d 1131, 1132 (5th Cir. 1983).  Thus, in an action where a state or state agency is a party, there ordinarily can be no federal jurisdiction based on diversity of citizenship.  *See e.g.*, <u>Union Oil</u>, 458 F.3d at 366; <u>Tradigrain</u>, 701 F.2d at 1133-1134; <u>Veterans Support Org.</u>, 166 F. Supp. 3d at 819.

7.2    Federal courts have also held that some state agencies are so independent of their states that they may be considered "citizens" that are separate and distinct from the state, for the purpose of federal diversity jurisdiction.  *See e.g.*, <u>PYCA</u>, 81 F.3d at 1417

---

[4] Cases sometimes refer to a state agency with alter ego status as an "arm of the state."  *See e.g.*, <u>Richardson v. S. Univ.</u>, 118 F.3d 450, 456 (5th Cir. 1997) (holding that state university and its board of supervisors are arms of the State of Louisiana that are entitled to Eleventh Amendment immunity).

(holding that Harrison County Wastewater Management District is a citizen for diversity jurisdiction purposes). In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit, which is a question of state law. _Tradigrain_, 701 F.2d at 1132. Federal courts tasked with making such a determination "must look to any and all available sources for guidance," including (1) whether the agency may hold and use property, (2) whether the agency may sue and be sued in its corporate name, (3) the extent of the agency's independent management authority, and (4) the treatment of the agency by the state courts. _Id._ The fourth factor, treatment by the state courts, "'subsumes all others.'" _Id._ (_quoting Huber, Hunt & Nichols v. Architectural Stone Co.,_ 625 F.2d 22, 24–25 (5th Cir.1980))." Texas Cty. & Dist. Ret. Sys. v. Wexford Spectrum Fund, L.P., 953 F. Supp. 2d 726, 728 (W.D. Tex. 2013). The Fifth Circuit uses the same analysis to determine whether a State agency is entitled to sovereign immunity from suit under the Eleventh Amendment. Tradigrain, 701 F.2d at 1133. Accordingly, the Fifth Circuit and other circuits have focused on the availability of sovereign immunity as a crucial determinant of alter-ego status. Wexford Spectrum Fund, 953 F. Supp. 2d at 728-729 (_citing_ Tradigrain, 701 F.2d at 1133; Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260–65 (4th Cir. 2005); Ronwin v. Shapiro, 657 F.2d 1071, 1073 (9th Cir. 1981)).

7.3    As explained above, Texas statutes designate the TCEQ as the State's predominant environmental agency and further make the TCEQ a necessary and indispensable party to civil environmental enforcement actions initiated by local

governments because the State is a real party in interest in such suit.  Because the Fifth Circuit holds that this is the essential question in determining whether an agency serves as a state's alter ego, it should be clear that the TCEQ qualifies as such.  Nevertheless, a further examination of Texas law and the courts' treatment of the TCEQ, confirms that it functions as the State's alter ego.

7.4     The TCEQ was created by Texas statute as "the agency of the state given primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment."  Tex. Water Code § 5.012; *see also id*. § 5.051 ("The [TCEQ] is created as an agency of the state."). Its three presiding commissioners are "officer[s] of the state."  *Id.* § 5.052, .055.

7.5     The scope of the TCEQ's independent management authority is limited by State law.  Notably, the TCEQ's three Commissioners are not independently elected or selected.  Rather, they are "appointed by the governor with the advice and consent of the senate to represent the general public."  *Id*. § 5.052 (emphasis added).  The TCEQ's power and jurisdiction are generally prescribed by statute.  *Id*. §§ 5.013, 102. Additionally, the TCEQ is subject to legislative oversight, and will be abolished in 2023, unless the Texas Legislature continues its existence as provided by the Texas Sunset Act.  *Id*. § 5.014.  Prior to each regular Texas legislative session, the TCEQ is required to file a written report with the governor and members of the legislature that includes a statement of the TCEQ's activities during the preceding fiscal biennium.  *Id.* § 5.178.  Likewise, the TCEQ is required to provide annual reports to the governor, lieutenant governor, and speaker of the

house of representatives concerning the agency's enforcement actions for the preceding

fiscal year, including a comparison with its enforcement actions for each of the preceding

five fiscal years. *Id*. § 5.126(a).

7.6     The scope of the TCEQ's authority to hold and use property is also limited.

Generally speaking, the TCEQ's use of funds is subject to legislative appropriation. *Id*.

§ 5.237.  The agency's operating funds are held in an account within the Texas treasury.

*Id.*  The Texas Comptroller of Public Accounts transfers funds to that account for the

purpose of making expenditures for which there are corresponding appropriations. *Id.*  The

TCEQ is responsible for establishing and maintaining accounting records adequate to

support the periodic reconciliation of the operating fund and document expenditures from

each fund or account.  *Id.*  The financial transactions of the TCEQ are also subject to audit

by the State auditor.  *Id*. at § 5.171.  The Texas Legislature has not specifically authorized

the TCEQ to hold property, although it has given the TCEQ the authority to perform acts

that are necessary and convenient for carrying out its enumerated powers. *Id.* at § 5.102.

Notably, any civil penalty recovered in this lawsuit must be deposited in the general

revenue fund of the State treasury.  *See e.g*., Tex. Gov't Code §§ 404.094 (a) ("Fees, fines,

penalties, taxes, charges, gifts, grants, donations, and other funds collected or received by

a state agency under law shall be deposited in the treasury, credited to a special fund or

funds, and subject to appropriation only for the purposes for which they are otherwise

authorized to be expended or disbursed…"), (b) ("Money that is required by this subchapter

or by another law to be deposited in the treasury shall be deposited to the credit of the

general revenue fund unless the money is expressly required to be deposited to another fund, trust fund, or special account not in the general revenue fund. ").  Therefore, any authority the TCEQ has to hold property comes from the Texas Legislature.

7.7    The TCEQ also enjoys sovereign and Eleventh Amendment immunity from suit, and has limited authority to sue or be sued in its corporate name.  The Texas Supreme Court and Courts of Appeals have held that the TCEQ enjoys sovereign immunity from suit absent a clear and unambiguous statutory waiver.  *See* <u>Texas Natural Res. Conservation Comm'n v. IT–Davy</u>, 74 S.W.3d 849, 854 (Tex. 2002); <u>Texas Water Comm'n v. Dellana</u>, 849 S.W.2d 808, 809–10 (Tex. 1993); <u>Hooks v. Texas Dep't of Water Res.</u>, 611 S.W.2d 417, 419 (Tex. 1981); <u>Sierra Club v. Texas Comm'n on Envtl. Quality</u>, No. 03-14-00130-CV, 2016 WL 1304928, at *4 (Tex. App.—Austin Mar. 31, 2016, no pet.); <u>Texas Comm'n on Envtl. Quality v. Bonser-Lain</u>, 438 S.W.3d 887, 895 (Tex. App.—Austin 2014, no pet.). This Court has also held that claims against TCEQ for discrimination and retaliation in violation of the Americans with Disabilities Act are barred by Eleventh Amendment sovereign immunity.  <u>Matherly v. Texas Comm'n on Envtl. Quality</u>, No. A-09-CA-139-SS, 2009 WL 10669782, at *2 (W.D. Tex. May 28, 2009).  There are no reported opinions suggesting that the TCEQ should be considered anything other the State's alter ego. Meanwhile, the statutes providing the TCEQ with civil enforcement authority specifically contemplate that such suits be brought in the name of the State of Texas, not in the TCEQ's own name. *See* Tex. Water Code §§ 7.032(d) ("On request of the executive director, the attorney general or the prosecuting attorney in a county in which the violation occurs <u>shall</u>

initiate a suit in the name of the state for injunctive relief"); 7.105(a) ("On the request of the executive director or the commission, the attorney general shall institute a suit in the name of the state for injunctive relief under Section 7.032, to recover a civil penalty, or for both injunctive relief and a civil penalty."); 7.108 ("If the state prevails in a suit under this subchapter it may recover reasonable attorney's fees, court costs, and reasonable investigative costs incurred in relation to the proceeding.") (emphasis added). Therefore, the TCEQ's authority to sue and be sued is limited, and the statutes providing for the civil enforcement suits in the name of the State, support the conclusion that the TCEQ is not an independent agency that is distinct from the State.

7.8     In summary, Texas law and the courts' treatment of the TCEQ make clear that it functions as the State's alter ego. BRL's conclusory allegation that the TCEQ is a "independent state agency" lacks legal or factual support. Therefore, this civil action should be remanded because the TCEQ's presence as a party precludes complete diversity and thus deprives this Court of federal diversity jurisdiction.

## VIII.  Blue Ridge Landfill's Removal is Defective.

8.1     Title 28, United States Code Section 1446 sets forth the procedure for the removal of civil actions from a State court. The initial step in this statutory procedure is the filing of notice of removal in a district court of the United States. 28 U.S.C. § 1446(a). "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State

court shall proceed no further unless and until the case is remanded." *Id*. § 1446(d) (emphasis added).

8.2     In civil enforcement actions, the TCEQ is naturally adverse to a defendant allegedly violating the Texas Clean Air Act and TCEQ regulations.  Accordingly, when the TCEQ is a necessary and indispensable party pursuant to Texas Water Code Section 7.353, it ordinarily enters an appearance as an aligned-party plaintiff. *See e.g*., Brazoria Cty., 518 S.W.3d at 927.

8.3     In the instant case, BRL filed is Notice of Removal in federal court three days after it was served with process in the State court proceeding.  BRL also filed its Notice of Removal before State of Texas, acting by and through the TCEQ, entered an appearance in State Court.  *See* Doc. 1-6 through 1-8.  The TCEQ's Executive Director is the agency's appropriate agent for service in litigation.   *See* Tex. Water Code Ann. § 5.357.  Nevertheless, BRL never provided the TCEQ or its Executive Director with written notice that it had filed a Notice of Removal.  Therefore, BRL's removal is defective.  This defect is in addition to this action's lack of subject matter jurisdiction.

8.4     A motion to remand a case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  28 U.S.C. § 1447(c).  BRL filed is Notice of Removal on August 4, 2017.  *See* Doc. 1.  Accordingly, Texas timely files this Motion for Remand less than 30 days later, on August 28, 2017.  Therefore, this action should be remanded to the 98th Judicial District Court of Travis County, Texas because BRL's removal was defective.

# IX.  CONCLUSION

9.1    The State of Texas, acting by and through the TCEQ, is a necessary and indispensable party to this civil action.  There can be no diversity jurisdiction when the State is a party.  Consequently, this Court lacks federal diversity subject matter jurisdiction. Further, the removal by Defendant Blue Ridge Landfill TX, L.P., is defective because it failed to provide written notice to an adverse party, the State of Texas.  Therefore, this civil action should be remanded to the 98th Judicial District Court of Travis County, Texas.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division


_    //s// Phillip Ledbetter_____
PHILLIP LEDBETTER
Assistant Attorney General
State Bar No. 24041316
Phillip.Ledbetter@oag.texas.gov
Office of the Attorney General
Environmental Protection Division
P.O. Box 12548 (MC-066)

Austin, Texas 78711-2548
Phone: (512) 475-4152
Fax: (512) 320-0911

ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7-2(i), I certify that on August 28, 2017, I conferred with counsel for Defendant Karson Thompson in a good faith attempt to resolve this matter by agreement. No agreement could be reached because Defendant would not agree that this Court lacks jurisdiction.

___//s// Phillip Ledbetter___
PHILLIP LEDBETTER

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *State of Texas's Motion to Remand* has been served on the persons listed below, by the method shown below on August 28, 2017:

Tony Ford
tford@beckredden.com
Beck Redden LLP
1221 McKinney St., Ste. 4500
Houston, Texas 77010

Karson K. Thompson
kthompson@beckredden.com
Beck Redden LLP
515 Congress Ave., Ste. 1900
Austin, Texas 78701
*Attorneys for Defendant Blue Ridge Landfill TX, LP*
*Via E-Service and E-Mail*

Darrin M. Coker
dcoker@pearlandtx.gov
Office of the City Attorney
City of Pearland Texas
3519 Liberty Drive
Pearland, Texas 77581

Daniel W. Ray
daniel@scottraylaw.com
Abigail k. Sullivan
abigail@scottraylaw.com
Katrina Pemberton
katrina@scottraylaw.com
Scott, Ray & Sullivan PLLC
2608 Stonewall Street
Greenville, Texas 75402

Earnest W. Wotring
ewortring@bakerwotring.com

David George
dgeorge@bakerwotring.com
Debra Tsuchiyana Baker
dbaker@bakerwotring.com
John Muir
jmuir@bakerwotring.com
Karen Dow
kdow@bakerwotring.com
Baker Wotring LLP
700 JPMorgan Chase Tower
600 Travis
Houston Texas 7702
*Attorneys for Plaintiff City of Pearland, Texas.*
*Via E-Service and E-Mail*


    *//s// Phillip Ledbetter*
PHILLIP LEDBETTER